**IN THE UNITED STATED DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **ISHA R. KABBA** | ) | |
| | ) | |
| **Plaintiff,** | ) | **JURY DEMAND** |
| | ) | |
| v. | ) | **No. _____** |
| | ) | |
| **METROPOLITAN NASHVILLE** | ) | |
| **HOSPITAL AUTHORITY dba** | ) | |
| **NASHVILLE GENERAL HOSPITAL** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

## COMPLAINT
_____

1. This discrimination and retaliation action is brought by Plaintiff Isha R. Kabba ("Ms. Kabba" or "Plaintiff") for violations of the Tennessee Human Rights Act ("THRA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and The Civil Rights Act of 1991 and 42 U.S.C.A. § 1981(a), and the Tennessee Public Protection Act ("TPPA"),.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C § 1331 and 1367. Venue is properly in the Middle District of Tennessee the alleged violations occurred in this judicial district.

3. Plaintiff has fulfilled all conditions precedent for all causes of action and received a Notice of Suit Rights related to certain federal claims. This action is timely filed.

## THE PARTIES

4. Plaintiff is an African American woman. Plaintiff resides in Nashville, Davidson County, Tennessee and is a former employee of Defendant.

5. Defendant, Nashville Hospital Authority d/b/a Nashville General Hospital ("General" or "Hospital") is a hospital with its location being 1818 Albion Street, Nashville, Tennessee

37208. General employs over fifteen (15) people and is formed under the laws of the State of Tennessee and under the ordinances of Metropolitan Davidson County, Tennessee.

## FACTUAL ALLEGATIONS

6. Defendant hired Ms. Kabba around December 2018.

7. Full-time positions in the Department are salaried and provide employee benefits.

8. Defendant initially represented to Ms. Kabba that she was hired in a full-time position with benefits.

9. Defendant later represented that it made a mistake, did not have a full-time position available at the time, and offered Ms. Kabba a pool employee PRN position.

10. Defendant's agents promised Ms. Kabba that she would later be employed as a full-time employee once a position became available.

11. Ms. Kabba accepted the pool employee PRN position with the understanding that she would become a full-time employee once a position became available. Ms. Kabba was not provided employee benefits in her PRN Nurse position.

12. Early in Ms. Kabba's employment, Defendant regularly scheduled her to work full-time work hours (at, around, or above 40 hours per workweek).

13. Defendant and its management agents continued to represent that Ms. Kabba would receive a promotion and/or be hired as a full-time employee with benefits once a position became available on multiple occasions early in her employment. Supervisors repeatedly stated that they would look into transitioning Ms. Kabba to a full-time position in the near future early in her employment.

14. Ms. Kabba is a Black (African American) woman.

15. Leslie Fox is a Caucasian (white) woman. Ms. Fox was employed as a Team Lead in the Department.

16. In or around early March 2019, Team Lead Leslie Fox make racially derogatory comments regarding black women while talking on her cell phone. Specifically, Ms. Fox said, "Black women are lazy, fat, and only good for lying on their backs and making babies." She also stated that she "only liked black men for their big d—ks" on the call.

17. Ms. Kabba heard Ms. Fox make the racially derogatory comments and represented to Ms. Fox that she would be reporting her to management. In response, Ms. Fox stated, "Go ahead, no one is going to believe a black girl like you."

18. Shortly thereafter, Ms. Kabba reported the comments and conduct of Ms. Fox to Department Manager Andrew Welker. Ms. Kabba also alerted several coworkers about Ms. Fox's comments around the same time.

19. Mr. Welker's race is White (Caucasian).

20. No investigation was conducted in response to Ms. Kabba's report to Mr. Welker in March 2019. Ms. Fox was not disciplined or reprimanded as a result of Ms. Kabba's report to Mr. Welker in March 2019.

21. Ms. Fox became aware that Ms. Kabba spoke to others about her racially derogatory comments. In response, Fox targeted Ms. Kabba with harassing, hostile, and antagonistic acts in the workplace. Fox talked to Plaintiff in hostile and aggressive tones during workplace interactions. Fox started raising claims about performance and time-clock issues to management against Ms. Kabba on at least March 19, 2019 and March 29, 2019. Fox also told Defendant that Ms. Kabba should not be given the full-time position with benefits she desired.

22. Mr. Welker also began treating Plaintiff in a harassing and hostile manner in the workplace. Welker also began speaking to Plaintiff in hostile and condescending tones during workplace interactions. Welker also started targeting Plaintiff with performance and time-clock criticisms. Welker also began gathering documentation related to Ms. Kabba's job performance and time-clock issues to support a pretextual basis for termination. And despite a need for full-time workers in the Department, and earlier representations that he would look into putting Plaintiff in said position, Welker did not place Plaintiff in a full-time position and actively began advocating against Plaintiff being appointed to such a position.

23. In early April 2019, Welker told Plaintiff that she was being terminated.

24. Welker claimed that Ms. Kabba was being fired for alleged insubordination that was reported by Ms. Fox on March 29, 2019. No investigation into the alleged insubordination report against Ms. Kabba was launched by Defendant. Ms. Kabba denied the allegations of insubordination to Welker and told him her side of the story, but Welker remained firm in his termination decision based on the claims made by of the non-black Team Lead (Fox) against Plaintiff without investigation.

25. Ms. Kabba solicited Union intervention, believing there to be a retaliatory and discriminatory motivation for the termination,. Ms. Kabba was a dues-paying member of the Union and entitled to certain protections.

26. After Ms. Kabba secured Union intervention, Defendant rescinded Ms. Kabba's termination.

27. Plaintiff did not receive a write up as a result of the alleged insubordination incident referenced by Ms. Fox on March 29, 2019.

28. On or about April 11, 2019, a meeting occurred where Ms. Kabba raised concerns that her treatment was retaliatory and again raised her prior report about Ms. Fox making racially derogatory comments about black women.

29. Defendant allegedly conducted a formal investigation in response to Ms. Kabba's April 2019 report of discriminatory and derogatory comments and treatment by Ms. Fox. Defendant unearthed troubling concerns about Ms. Fox and her workplace behavior, including her treatment of Plaintiff at the workplace. Nevertheless, Fox was neither reprimanded nor disciplined as a product of the investigation.

30. Subsequently, the hostilities towards Ms. Kabba by Defendant grew progressively worse. Defendant and its agents spoke even more aggressively towards Plaintiff in hostile, harassing, and condescending tones during workplace interactions. Defendant and its agents began scrutinizing Mr. Kabba's workplace and time-clock activities in a manner that differed from her coworkers who had not made similar reports of discrimination, harassment, or retaliation. Defendant and its agents began creating a paper trail or correspondence and documentation to support a pretextual grounds for adverse employment action against Plaintiff.

31. Defendant began cutting Ms. Kabba's work hours after her report(s) of discriminatory and derogatory behavior by Team Lead Leslie Fox. Defendant's decision to cut Plaintiff's work hours caused her significant financial hardship, anxiety, and emotional distress. Persons on staff who had not made similar reports of discrimination continued to receive work hours and shifts sufficient to maintain an appropriate standard of living.

32. Defendant also bypassed Plaintiff for full-time positions in the Department after her report(s) of discriminatory and derogatory behavior against Team Lead Leslie Fox. The

individuals who received full-time positions did not make similar reports of discrimination to Defendant.

33. Ms. Kabba heavily involved her Union representatives in her workplace issues involving discrimination and retaliation in the workplace after April 2019.

34. In June and July 2019, Ms. Kabba made known her intent to file a formal charge of discrimination with the Equal Employment Opportunity Commission as a result of her workplace treatment. The EEOC formally processed as a charge of discrimination on July 19, 2019.

35. While Plaintiff's discrimination report was being investigated, in June 2019, Access Manager Tasha Leach had multiple conversations with Plaintiff regarding her work hours, reports of discrimination, and desire to become a full-time employee. Ms. Leach told Ms. Kabba that Plaintiff could become a full-time employee with benefits if she "dropped the case/investigation" related to Ms. Fox. The quid pro quo offer to drop her discrimination claims was rejected by Ms. Kabba.

36. In July 2019, Ms. Kabba made another report of workplace discrimination and retaliation. She alerted Defendant of Ms. Leach's quid pro quo offer to drop her discrimination claims.

37. Defendant "investigated" Plaintiff's July 2019 discrimination-based report. No employee was disciplined or reprimanded as a result of Ms. Kabba's July 2019 report.

38. Subsequently, Defendant increased its harassing and hostile acts towards Plaintiff in the workplace even further. Defendant's agents increased the negative and condescending tones in which it spoke to Plaintiff during daily interactions. Defendant increased its scrutiny of Ms. Kabba's workplace and time-clock activities. Defendant increased its

6

creation of correspondence and emails designed to portray Plaintiff in a negative light to support a pretextual adverse employment action in the future.

39. Defendant's treatment of Plaintiff was obvious and retaliatory, and caused Plaintiff to suffer fear of losing her job, anxiety, and severe emotional distress.

40. On September 3, 2019, Defendant created circumstances that resulted in an aggressive workplace altercation and assault against Plaintiff. Defendant, through the actions of Tasha Leach, covertly confiscated Plaintiff's cell phone charger and refused to give it back. Ms. Kabba took efforts to get her property back by going to Human Resources. During the meeting, HR Agent Tina Norris threw her personal cell phone at Plaintiff and had her escorted off the premises.

41. The Metro Nashville Police were called to the workplace to deescalate the situation. At that time, Plaintiff verbalized her intent to file a police report related to the alleged assault/battery/violence that occurred at the workplace.

42. Tina Norris was neither disciplined nor reprimanded as a result of her conduct at the workplace, which was witnessed by other employees.

43. Plaintiff was not terminated on September 3, 2019 and Defendant made no representation that she would be fired on that date.

44. Subsequently, Plaintiff filed a charge and formal order of protection as a result of the conduct that occurred at the workplace on September 3, 2019. She alleged various violations of Tennessee law related to assault, battery, or violence against her.

45. On September 10, 2019, shortly after being receiving information that Ms. Kabba did in fact make a police report related to the assault/battery that occurred on September 3, 2019, Defendant terminated Ms. Kabba.

46. Defendant delivered a termination letter on September 10th that was back-dated for September 6, 2019, and claimed that the reason(s) for termination was Ms. Kabba violating its "Employee Use of Mobile Electronic Devices" and "Disruptive Behavior and Harassment" policies on September 3, 2019.

47. Defendant's asserted reason(s) for Plaintiff's termination have no basis in fact and are otherwise insufficient to motivate her termination. Defendant's asserted reason(s) for Plaintiff's termination is a pretext for unlawful discrimination and retaliation.

48. Defendants actions were willful, malicious, and demonstrated reckless indifference to Plaintiff's right to work in an environment free from discrimination and retaliation.

49. Defendant's conduct caused Ms. Kabba to suffer substantial loss of income and other privileges of employment; cause her to incur medical expenses that she otherwise would not have; and caused her to suffer inconvenience, embarrassment, humiliation, emotional distress, mental anguish, stress, anxiety, and exacerbation of medical conditions, damage to her reputation, and loss of enjoyment of life. Additionally, Plaintiff has incurred attorney's fees, costs, and related litigation expenses to her personal detriment.

## CAUSES OF ACTION

Ms. Kabba incorporates all paragraphs above as if set forth in each count below.

## RETALIATION – Title VII, THRA, 1981, 1991

50. Based on the conduct described in this Complaint, Defendant is liable for unlawful retaliation in violation of the aforementioned federal and state laws.

51. Plaintiff engaged in multiple protected acts by reporting discriminatory conduct in violation of the aforementioned federal and state laws.

52. Defendant responded to Plaintiff's protected acts by treating Plaintiff adversely, creating a hostile work environment, and ultimately terminating her employment on pretextual grounds.

53. Defendant's retaliatory treatment of Plaintiff was intentional and demonstrates a reckless indifference to her legally protected rights.

54. Defendant's retaliatory conduct described in this Complaint was unlawful, motivated by Plaintiff's opposition to unlawful conduct, and would not have occurred but-for her decision to engage in protected conduct.

## RETALIATION – TPPA

55. Based on the conduct described in this Complaint, Defendant is in violation of the Tennessee Public Protection Act.

56. Plaintiff engaged in protected acts by reporting conduct in violation the civil or criminal code of Tennessee in September 2019.

57. In response, Plaintiff was terminated.

58. Defendant's retaliatory treatment of Plaintiff was intentional and demonstrates reckless indifference to her legally protected rights.

59. Defendant's retaliatory conduct described in this Complaint was unlawful, motivated by Plaintiff's opposition to unlawful conduct, and would not have occurred but-for her decision to engage in protected conduct.

## DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

### Title VII, THRA, 1981 and 1991

60. Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out herein.

61. Plaintiff was harassed and discriminated against by employees and agents of Defendant in a variety of ways, which created a hostile work environment for her on the basis of race. Plaintiff was targeted with adverse documentation, disbelieved regarding workplace complaints, denied multiple full-time positions, terminated (albeit later rescinded), and suffered other harms as a result of discriminatory treatment based on her race. And when Plaintiff reported this conduct, she suffered additional acts of discrimination and retaliation for the remainder of her employment.

62. Said acts of discrimination have adversely affected Plaintiff. Defendant's conduct was unlawful and based on race. Plaintiff was treated less favorably in the workplace than similarly situated non-black employees – including Leslie Fox.

## Prayer for Relief

Plaintiff respectfully requests:

1. That process issue and be served upon Defendant, and that it be directed to answer this Complaint within the time period prescribed by law;

2. That this case be set for trial and that a jury be empaneled to hear and decide the merits and damages;

3. That Plaintiff be awarded judgment and damages, including but not limited to back pay, front pay, punitive damages (if available), and compensatory damages for embarrassment, humiliation, mental anguish and stress, and outrage exceeding $500,000.00.

4. That Plaintiff be awarded attorneys' fees and expenses;

5. That Plaintiff be awarded pre-judgment interest;

6. That all costs be taxed against Defendant; and

7. That Plaintiff be awarded such other and further legal or equitable relief to which she may be entitled.

Respectfully Submitted,

/s Brian C. Winfrey

Brian Winfrey, TN Bar No. 02576
MORGAN & MORGAN
810 Broadway, Suite 105
Nashville, Tennessee 37203