IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ISHA R. KABBA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:20-cv-00738 |
| | ) | |
| METROPOLITAN NASHVILLE | ) | JUDGE CAMPBELL |
| HOSPITAL AUTHORITY d/b/a | ) | MAGISTRATE JUDGE HOLMES |
| NASHVILLE GENERAL HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court is Defendant Nashville Hospitality Authority's ("Metro General's") motion for summary judgement. (Doc. No. 30). Plaintiff Isha R. Kabba ("Ms. Kabba") filed a response in opposition (Doc. No 39) and Metro General filed a reply (Doc. No. 49). Metro General also filed a motion to strike Plaintiff's declaration. (Doc. No. 46). Ms. Kabba filed a response in opposition (Doc. No. 50) and Metro General filed a reply (Doc. No. 51). For the reasons discussed below, Metro General's motion to strike will be **DENIED**, and its motion for summary judgment will be **GRANTED** in part and **DENIED** in part.

### I.  MOTION TO STRIKE

Metro General took Ms. Kabba's deposition on November 17, 2021, and subsequently filed its pending motion for summary judgment in December 2021. On January 12, 2022, Ms. Kabba filed her declaration. (Doc. No. 43). Metro General moves to strike paragraphs of Ms. Kabba's declaration on the basis that they directly contradict her prior deposition testimony. (Doc. Nos. 46-47, 51).  Metro General also argues that statements in Ms. Kabba's declaration lack evidentiary

foundation or personal knowledge. (*See* Doc. Nos. 46-47, 51). Such challenges are not appropriately raised in a motion to strike and the Court declines to consider them.

The "sham affidavit" rule provides that a party cannot create a genuine dispute of material fact with an affidavit that conflicts with the party's earlier testimony about the fact. *See Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 842 (6th Cir. 2021). "The purpose of this rule to is prevent a party from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony[.]'" *Johnson v. Ford Motor Co.*, 13 F.4th 493, 501 (6th Cir. 2021) (quoting *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016)). "However, this rule is not intended to prevent a party who was not directly questioned about an issue from supplementing incomplete deposition testimony with a sworn affidavit …. because we do not require the deponent to volunteer information the questioner fails to seek." *Id.* (internal quotation marks omitted); *see also Briggs v. Potter*, 463 F.3d 507, 513–14 (6th Cir. 2006) (finding that the district court abused its discretion in striking a reference in a post-deposition affidavit on which the deponent "was not expressly asked" at deposition despite being "questioned generally about that June 2001 conversation").

"[A] district court deciding the admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006). Courts in the Sixth Circuit "construe whether the affidavit directly contradicts prior deposition testimony narrowly[.]" *Johnson*, 13 F.4th at 501.

In the present case, Metro General claims that the statement in paragraph 22 of Ms. Kabba's declaration – "[t]he next day or so, I made a discrimination complaint to Welker[.]" – directly contradicts her deposition testimony about when she told Mr. Welker about Ms. Fox's comments:

> Q: Now, you say you called Andrew several times and never got a
> response. Were you actually able to ever really get a chance to talk

2

> with him about what happened or were you just unable to get ahold of him?
>
> A: I sent text messages, I believe, I called him, left messages. He would always – I wasn't able to talk to him until the whole situation happened. He would say he would get back to me, but I was never really – he never got back to me until that day.
>
> Q: Meaning April 11th?
>
> A: Yeah, it's when – Yes, when I was called into the office.

(Doc. No. 41-1 at PageID # 565). (*See* Doc. No. 51 at 2-3). Ms. Kabba's deposition testimony that she sent text messages and left voice messages for Mr. Welker about Ms. Fox's comments is not contradictory to Ms. Kabba's statement in her declaration that she made a discrimination complaint to Mr. Welker the day after Ms. Fox's comments.

Metro General also claims that the statement in paragraph 15 of Ms. Kabba's declaration that she had not been issued a "Verbal/Written Counseling reprimand" contradicts her deposition testimony admitting that she had been verbally counseled for tardiness and overstaying her shift. (*See* Doc. No. 47 at 10, Doc. No. 51 at 5). However, Ms. Kabba's declaration does not state that she was never verbally counseled. Ms. Kabba's deposition testimony that she was verbally counseled is not contradictory to the statement in her declaration that she was not issued any reprimands. For the foregoing reasons, Metro General's Motion to Strike (Doc. No. 46) will be denied.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Factual and Procedural Background

At all times during her employment with Metro General, Ms. Kabba worked in a part-time position in the Patient Access Department with Leslie Fox ("Ms. Fox"). In early March 2019, Ms. Kabba heard Ms. Fox state on a phone call at work that "Black women are lazy, fat, and only good

3

for lying on their backs and making babies" and that she "only liked black men for their big dicks." (Doc. No. 40 ¶ 7). When Ms. Kabba informed Ms. Fox that she was going to report her for making offensive comments, Ms. Fox responded: "Go ahead. No one is going to believe a black girl like you." (*Id*.). The next day, Ms. Kabba informed her supervisor, Andrew Welker ("Mr. Welker"), of Ms. Fox's comments. (Doc. No. 43 ¶ 48). Ms. Kabba also spoke about Ms. Fox's comments with multiple coworkers. (Doc. No. 48 ¶ 49).

Ms. Fox found out that Ms. Kabba complained and was speaking to coworkers about her comments, and subsequently emailed Mr. Welker that Ms. Kabba should not be offered a full-time position. (*Id*. ¶¶ 50-51; Doc. No. 40-9). Less than two weeks later, on March 29, 2019, Ms. Fox sent another email to Mr. Welker complaining about Ms. Kabba. (Doc. No. 40-10). Ms. Fox also sent her March 29th email complaining about Ms. Kabba to Metro General's Senior Director of Revenue Cycle Systems, Christine Crowley ("Ms. Crowley"). (*Id*.). On April 9, 2019, Mr. Welker informed Ms. Kabba that she was terminated because Ms. Fox complained about Ms. Kabba being confrontational towards her. (Doc. No. 48 ¶¶ 56-60). Metro General rescinded the termination after meeting with Ms. Kabba and her union representative on April 11, 2019. (*Id*. ¶¶ 64, 70).

By May 2019, Tasha Leach ("Ms. Leach") had become Ms. Kabba's supervisor. (*Id*. ¶ 98). On May 7, 2019, Ms. Kabba talked with Ms. Leach about her discrimination complaints concerning Ms. Fox and asked to be hired for a full-time Patient Services Representative ("PSR") position. (*Id*. ¶¶ 100, 102-103). Ms. Kabba met with Ms. Leach in June and again asked to be hired for a full-time PSR position. (*Id*. ¶¶ 104-105). Ms. Leach responded by offering Ms. Kabba a full-time PSR job if she dropped the complaint against Ms. Fox. (*Id*. ¶ 106). Mr. Welker and Ms. Crowley told Ms. Leach not to hire Ms. Kabba for a full-time PSR position unless Ms. Kabba dropped the discrimination complaint concerning Ms. Fox. (*Id*. ¶ 107; Doc. No. 33 ¶ 24).

4

Ms. Kabba filed a discrimination and retaliation charge with the EEOC on July 19, 2019. (Doc. No. 40-28). On September 3, 2019, Metro General's Director of Human Resources, Tina Norris ("Ms. Norris"), threw her cell phone at Ms. Kabba, striking Ms. Kabba with the phone (the "Incident"). (Doc. No. 48 ¶ 154). On September 3, 2019, Ms. Kabba filed a police report concerning the Incident. (*Id*. ¶ 158). On September 9, 2019, Ms. Kabba filed a petition for an order of protection against Ms. Norris. (Doc. No. 40 ¶ 38). On September 10, 2019, Ms. Norris emailed Ms. Kabba that her employment was terminated effective September 6, 2019. (*Id*. ¶ 37).

On August 30, 2020, Ms. Kabba filed suit against Metro General, alleging violations of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, *et seq*., Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., the Civil Rights Act of 1991, 42 U.S.C. § 1981(a), and the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 51-1-304. (Doc. No. 1).

**B. Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving

party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## C. Analysis

As an initial matter, as Metro General correctly points out, Section 1981's implicit cause of action does not extend to suits brought against state actors, such as itself. *See Arendale v. City of Memphis*, 519 F.3d 587, 598–99 (6th Cir. 2008); *see also Johnson v. Ford Motor Co.*, 13 F.4th 493, 503 (6th Cir. 2021) ("Under 42 U.S.C. § 1981, employees have a cause of action for racial harassment in the workplace against private employers.") (citation and internal quotations omitted). Accordingly, summary judgment will be granted as to Ms. Kabba's Section 1981 claims. Summary judgment will also be granted as to Ms. Kabba's racially hostile work environment claim because she failed to respond to Metro General's arguments for dismissal of that claim.

Ms. Kabba's discrimination claims, brought under theories of cat's paw liability and disparate treatment, and her retaliatory hostile work environment claim will proceed to trial as Metro General does not move for summary judgment on these claims. Conversely, as Ms. Kabba's discrimination claims are not premised on her termination in September 2019 or Metro General's failure to hire her for a full-time position in 2018 or after her June 27, 2019 application, the Court need not address Metro General's arguments for summary judgment of such claims.

6

The Court will now address Metro General's arguments for summary judgment of Ms. Kabba's retaliation claims brought under Title VII, THRA, and the TPPA.

1. Title VII and THRA

"Title VII prohibits retaliation against an employee for engaging in conduct protected by Title VII." *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 613 (6th Cir. 2019).[1] A plaintiff may prove retaliation either through direct evidence or circumstantial evidence. *See Jackson v. Genesee Cty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021). "Whether a plaintiff's evidence may be properly categorized as direct or circumstantial is of importance, because a direct-evidence claim is removed from the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 346 (6th Cir. 2012). "For a plaintiff to prevail under a theory of direct evidence of retaliation, he would have to show both 'blatant remarks' revealing the defendant's retaliatory intent and that the retaliatory intent was a motivating factor in the defendant's adverse employment action toward him." *Kostic v. United Parcel Serv.*, Inc., 532 F. Supp. 3d 513, 537 (M.D. Tenn. 2021) (citing *Mansfield v. City of Murfreesboro*, 706 F. App'x 231, 235–36 (6th Cir. 2017)).

Here, Ms. Kabba has come forward with direct evidence of retaliation. (*See* Doc. No. 39 at 18). Ms. Kabba submitted evidence that, on or about June 18, 2019, Ms. Leach offered her a full-time PSR job *if* she dropped her discrimination complaint against Ms. Fox. (Doc. No. 48 ¶ 106; Doc. No. 40-26 at PageID # 504). Additionally, Ms. Kabba submitted evidence that Mr. Welker and Ms. Crowley told Ms. Leach not to hire Ms. Kabba for the full-time position unless Ms. Kabba dropped the discrimination complaint concerning Ms. Fox. (Doc. No. 48 ¶ 107; Doc. No. 40-26 at

---

[1] "The analysis of claims brought pursuant to the THRA is identical to the analysis used for Title VII claims." *Austin v. Alexander*, 439 F. Supp. 3d 1019, 1024 n.2 (M.D. Tenn. 2020) (quoting *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n.1 (6th Cir. 2008)).

PageID # 505). The Court finds that these remarks constitute direct evidence of retaliation against Ms. Kabba for making complaints of discrimination against Ms. Fox because they require the drawing of no inferences to reach the conclusion that Mr. Welker and Ms. Crowley wished to retaliate against Ms. Kabba for making complaints of discrimination. These statements require a conclusion by the factfinder that retaliation was at least a motivating factor for Metro General not hiring Ms. Kabba for a full-time PSR job.

"Where a plaintiff produces credible direct evidence of retaliation, 'in the absence of an alternative, non-discriminatory explanation for that evidence, there exists a genuine issue of material fact suitable for submission to the jury without further analysis by the court.'" *Kostic*, 532 F. Supp. 3d at 539 (quoting *Norbuta v. Loctite Corp.*, 1 F. App'x 305, 311-12 (6th Cir. 2001)). General Metro filed a reply, but did not produce an alternative, non-retaliatory explanation for Ms. Leach's statements. Nor does it dispute, for purposes of summary judgment, that Ms. Leach made the foregoing statements. Accordingly, summary judgment will not be granted on these claims.

2. TPPA

The TPPA provides a cause of action for "discharge in retaliation for refusing to remain silent about illegal activities." *Williams v. City of Burns*, 465 S.W.3d 96, 110 (Tenn. 2015). A *prima facie* case under the TPPA requires proof of four elements: (1) the plaintiff was an employee of the defendant; (2) the plaintiff refused to participate in or remain silent about illegal activity; (3) the defendant employer terminated the plaintiff's employment; and (4) the defendant terminated the plaintiff's employment solely for the plaintiff's refusal to participate in or remain silent about the illegal activity. *See id*. at 111. Once a plaintiff makes out a *prima facie* case, the burden shifts to the employer to articulate a non-retaliatory reason for the discharge. *See id*. "In articulating a non-retaliatory reason for discharging the employee, the defendant employer in a TPPA case …

8

need only introduce admissible evidence showing that unlawful retaliation was not the sole cause of the employment action." *Id*.

Metro General claims Ms. Kabba's cannot satisfy the fourth element of her TPPA claim. As the party moving for summary judgment, Metro General bears the initial burden of showing that Ms. Kabba cannot produce admissible evidence that it terminated her employment solely for refusing to remain silent about the Incident on September 3, 2019. Metro General attempts to meet its burden by producing evidence showing that: (1) the decision to terminate Ms. Kabba's employment was made effective September 6, 2019; (2) Ms. Kabba filed a petition for an order of protection against Ms. Norris on September 9, 2019; (3) Ms. Norris notified Ms. Kabba of her termination on September 10, 2019; and (4) Ms. Norris was served with Ms. Kabba's petition for an order of protection on September 10, 2019. However, the foregoing evidence has no bearing on Ms. Kabba's ability to produce admissible evidence showing that Metro General terminated her employment solely because she filed police reports concerning the Incident on September 3, 2019. As Metro General has neither presented affirmative evidence that negates an element of Ms. Kabba's TPPA claim nor demonstrated the absence of evidence to support Ms. Kabba's TPPA claim, it has not met its burden as the moving party to show the absence of a genuine dispute of material fact as to at least one essential element of this claim. *Wilson v. Gregory*, 3 F.4th 844, 855 (6th Cir. 2021); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

Nor has Metro General introduced evidence showing that unlawful retaliation was not the sole cause of Ms. Kabba's termination. Instead, it points to evidence that merely states what happened leading up to her termination. (Doc. No. 31 at 9-10 (citing Doc. No. 40 ¶¶ 11-12, 22-30, 34-36)). Metro General has not cited any affidavits or other evidence that states the reason(s) why

9

it decided to terminate Ms. Kabba's employment. Accordingly, summary judgment will not be granted on the TPPA claim.

**D. Conclusion**

For all of the foregoing reasons, Metro General's motion for summary judgment will be **GRANTED** in part and **DENIED** in part. The motion will be granted as to Ms. Kabba's claims made pursuant to 42 U.S.C. § 1981 and as to her racially hostile work environment claim. The motion will be denied as to all other claims.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE